United States District Court
Southern District of Texas
**ENTERED**
September 29, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| AGUSTIN NUNEZ-REYNOSO, § | |
| § | |
| Petitioner, § | |
| § | |
| VS. § | CIVIL ACTION NO. 2:22-CV-00069 |
| § | |
| WARDEN COX, ET AL, § | |
| § | |
| Respondent. § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner Agustin Nunez-Reynoso, proceeding *pro se*, is a federal prisoner at the Federal Correctional Institution-Three Rivers in Three Rivers, Texas. In April 2022, he filed the present 28 U.S.C. § 2241 petition, alleging that his due process rights were violated during prison disciplinary proceedings. (D.E. 1). Respondent Warden J.W. Cox ("the Government") has filed a motion for summary judgment, to which Nunez-Reynoso has responded. (D.E. 14, 15). For the reasons discussed further below, it is recommended that the Government's motion for summary judgment (D.E. 14) be **GRANTED** and Nunez-Reynoso's petition be **DENIED**.

### I.   JURISDICTION

This court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 and venue is appropriate in this court because Nunez-Reynoso is incarcerated in the Southern District of Texas. *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000).

## II. BACKGROUND

### a. Petition

In his petition, Nunez-Reynoso first alleges that the Bureau of Prisons ("BOP") violated his due process rights following a disciplinary hearing by removing 60 days of non-vested good time that he was not eligible to receive in the first place. (D.E. 1 at 6; D.E. 1-1 at 3-6). Second, Nunez-Reynoso contends that the BOP violated his due process rights by removing the 60 days of non-vested good time credits over three years after the disciplinary proceedings and denying him the ability to challenge the removal through the administrative remedy procedure. (D.E. 1 at 6; D.E. 1-1 at 6-7).

### b. *Summary Judgment Evidence*

In September 2011, Nunez-Reynoso was found guilty of one count of conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(C), and 846. (D.E. 13 at 3). The offense ended in March 2010. (*Id.*).

On June 12, 2017, a BOP staff member reported that he attempted to stop an inmate fight in which one inmate was being punched in the face by four other inmates. (*Id.* at 13). He got in the middle of the fight and gave verbal orders to stop fighting. He saw all five inmates, including Nunez-Reynoso, punching and attempting to punch each other in the face with closed fists. When the incident report was delivered to Nunez-Reynoso, he had no comments regarding the incident. (*Id.*). Medical records from the day of the fight indicate that Nunez-Reynoso was punched in the left eye and also had bruising and dried

blood on his right hand. (*Id.* at 19). Photos purportedly of Nunez-Reynoso showed his face and left shoulder. (*Id.* at 17).

Nunez-Reynoso was given notice of a hearing before the DHO on June 23, 2017. (*Id.* at 15). He declined a staff representative and declined to have witnesses. (*Id.*). He acknowledged in writing the rights he had in a DHO hearing. (*Id.* at 16).

At the June 23, 2017, hearing before the DHO, Nunez-Reynoso again declined a staff representative. (*Id.* at 8). He denied the charge of fighting with another person. He stated that: "I have nothing to say about the incident report. All I know, is I want to challenge the charge. I have no statement." He did not present any other witnesses. (*Id.*). In addition to the incident report, the DHO considered photographs and medical assessments of all the inmates involved in the fight, all of whom had minor injuries consistent with being in a fight. (*Id.* at 9). The DHO concluded that Nunez-Reynoso committed the act as charged. The DHO noted that he relied on the incident report, the photographs, and the medical records to make this conclusion. (*Id.* at 9-10). He also acknowledged that Nunez-Reynoso denied that the incident report was true but noted that Nunez-Reynoso provided no other statement or evidence in support of that claim. (*Id.*). As a result, the DHO imposed the following sanctions: (1) disallowance of 27 days of good conduct time; (2) forfeiture of 60 days of non-vested good conduct time; (3) 30 days of disciplinary segregation; (4) loss of 1 year of communication privileges; and (5) impoundment of personal property for 1 year. (*Id.* at 10). The DHO explained the reasons for each of these sanctions and noted that this was Nunez-Reynoso's third disciplinary conviction for fighting since July 2014. (*Id.*).

On August 11, 2017, Nunez-Reynoso filed an administrative appeal contending that he was assaulted by another inmate and that surveillance video footage would show that he never threw any punches. (D.E. 1-3 at 1). The appeal was denied by the BOP Regional Director, who found Nunez-Reynoso's contention not credible due to the reporting officer's statement that he observed Nunez-Reynoso striking another inmate. (*Id.* at 2). On October 3, 2017, Nunez-Reynoso appealed to the central office raising the same claim. (D.E. 1-4 at 1). He also asserted that he did not make a statement regarding the incident because he was intimidated by the DHO. (*Id.*). This appeal was also denied. (*Id.* at 2).

### III. DISCUSSION

In the motion for summary judgment, the Government first argues that Nunez-Reynoso was afforded all the due process protections required in prison disciplinary hearings under *Wolff v. McDonnell*, 418 U.S. 539 (1974). (D.E. 14 at 8-11). Second, the Government contends that the evidentiary standard in prison disciplinary proceedings was satisfied because some evidence supported Nunez-Reynoso's disciplinary conviction. (*Id.* at 11-13). Finally, the Government asserts that the forfeiture of 60 days of non-vested good conduct time was an appropriate sanction under the regulations. (*Id.* at 13-15).

Nunez-Reynoso responds that the records filed by the Government contain an error because they include photos of a different inmate who is incorrectly identified as Nunez-Reynoso. (D.E. 15 at 2). He further argues that the BOP's sentence data shows that the 60 days of non-vested good time credit were taken from the wrong year. (*Id.* at 2-3).

In prison disciplinary hearings, offenses are separated into four categories based on severity: greatest, high, moderate, and low. 28 C.F.R. § 541.3(a). Fighting with another

4

person is a high severity level prohibited act. *Id.* § 541.3, Table 1. Sanctions available for high severity level prohibited acts include: (1) forfeiture or withholding of earned statutory good time or non-vested good conduct time up to 50% or 60 days, which is less; (2) forfeiture of up to 27 days of earned FSA Time Credits for each prohibited act committed; (3) disciplinary segregation for up to 6 months; (4) loss of privileges; and (5) impoundment of the inmate's personal property, among other sanctions. *Id.* Inmates who committed their offense on or after April 26, 1996, lose good conduct sentence credit as a mandatory disciplinary sanction. *Id.* § 541.4(a), (b). For high severity offenses, the inmate will lose at least 27 days, or 50% of available credit if less than 54 days are available, for each act committed. *Id.* § 541.4(b)(2).

The disciplinary process begins with an incident report completed by a staff member who believes that an inmate committed a prohibited act. *Id.* § 541.5(a). The inmate will ordinarily be given a copy of the report within 24 hours. *Id.* A BOP staff member then investigates the report and must inform the inmate of the charges against him and that he may remain silent, but that his silence may be used to draw an adverse inference against him. *Id.* § 541.5(b)(1). The investigator will ask for a statement from the inmate, and the inmate may provide an explanation of the incident, request that witnesses be interviewed, or request that other evidence be obtained and reviewed. *Id.* § 541.5(b)(2). Following the investigation, a Unit Discipline Committee reviews the incident report. *Id.* § 541.7. However, high severity prohibited acts are automatically referred to the Discipline Hearing Officer ("DHO") for further review. *Id.* § 541.7(a)(4).

The DHO is an impartial decision maker who was not involved in the investigation or incident. *Id.* § 541.8(b). The inmate will receive written notice of the charges against him at least 24 hours before the DHO's hearing, although this requirement can be waived. *Id.* § 541.8(c). An inmate is allowed to have a staff representative at the DHO hearing and may request a person of their choice who was not involved in the incident or investigation. *Id.* § 541.8(d)(1). The inmate is permitted to appear before the DHO during the hearing, although an inmate can waive his appearance, or an appearance may be prohibited if necessary to protect institution security. *Id.* § 541.8(e). The inmate is also entitled to make a statement and present documentary evidence. *Id.* § 541.8(f).

If the DHO concludes that the inmate committed a prohibited act, the DHO can impose any of the available sanctions listed in § 541.3. *Id.* § 541.8(g). The DHO will produce a written report of their decision following the hearing that discusses whether the inmate was advised of his rights, the evidence relied on, the DHO's decision, the sanctions imposed, and the reasons for those sanctions. *Id.* § 541.8(h). The inmate may appeal the DHO's actions through the Administrative Remedy Program. *Id.* § 541.8(i). The inmate must file an Administrative Remedy Request within 20 days following the date on which the basis for the request occurred. *Id.* § 542.14(a).

In *Wolff*, the Supreme Court held that a prisoner is entitled to certain due process procedures in disciplinary proceedings, specifically: "(1) written notice of the charges at least 24 hours prior to a disciplinary hearing; (2) an opportunity to call witnesses and present evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; and (3) a written statement by the factfinders

6

as to the evidence relied on and the reason for the disciplinary action." *Morgan v. Quarterman*, 570 F.3d 663, 668 (5th Cir. 2009) (internal quotation marks omitted). In order for a DHO's decision to stand, a reviewing court need only find "some evidence" supporting the decision. *Id.*

> As explained by another court in this circuit:
>
> Federal prisoners are eligible for an award of up to 54 days credit each year. *See* 18 U.S.C. § 3624(b)(1); 28 C.F.R. § 523.20. The credit is awarded at the end of the year. 18 U.S.C. § 3624(b)(1). However, for inmates serving a sentence for an offense committed on or after April 26, 1996 (PLRA inmates), the award, though credited at the end of each year, does not vest until the date the prisoner is released from custody. 18 U.S.C. § 3624(b)(2). Thus, non-vested good conduct time is time which the inmate has earned for past years and which has been credited to him. It is distinguished from good conduct time available for the current year, which has not yet been credited.

*Harrell v. Rivers*, No. 3:18CV482-DPJ-FKB, 2020 WL 2815139, at *3 (S.D. Miss. May 4, 2020).

Here, Nunez-Reynoso has not established that his due process rights were violated during the disciplinary proceedings. First, as to his claim that the removal of non-vested good time credits was improper, the regulations specifically allow for the DHO to impose a sanction forfeiting up to 60 days of non-vested good conduct time. 28 C.F.R. § 541.3, Table 1. This applies to inmates who committed their offenses after April 26, 1996, which includes Nunez-Reynoso. (D.E. 13 at 3); *Harrell*, 2020 WL 2815139 at *3. More generally, Nunez-Reynoso was afforded the due process protections outlined in *Wolff* because he was given written notice of the charges more than 24 hours before the DHO hearing, had an opportunity to call witnesses and present evidence even though he declined to do so, and was given a written statement by the DHO as to the evidence relied on and

7

the reason for the disciplinary action. (*See* D.E. 13 at 9-10, 13, 15-16); *Morgan*, 570 F.3d at 668. Additionally, the evidence was sufficient to support the DHO's conclusion because "some evidence" supported that Nunez-Reynoso was fighting with another inmate, namely the reporting officer's observations and the medical records. (D.E. 13 at 13, 19); *Morgan*, 570 F.3d at 668. Although Nunez-Reynoso contends that the photos submitted by the Government in this case are of a different inmate, the DHO indicated that he reviewed the photos of every inmate in the fight, and regardless, this was not the only evidence supporting the conviction. (*Id.* at 9-10).

Finally, as to the timing of the removal of the 60 days of non-vested good conduct time, Nunez-Reynoso has not shown that he was prevented from appealing this sanction. The DHO announced the forfeiture of 60 days of non-vested good conduct time when he made his decision. (*Id.* at 10). Regardless of when the BOP entered the sanction into the system, Nunez-Reynoso was aware of it at the time he filed his administrative remedy appeal and was able to challenge it. Further, even if the BOP erroneously removed the 60 days from 2016 instead of 2017, Nunez-Reynoso has not shown how this would affect the duration of his confinement. *See Davis v. Fechtel*, 150 F.3d 486, 487, 490 (5th Cir. 1998). Regardless, the BOP's removal of the non-vested good time credits from the previous year appears to be correct because "non-vested good conduct time is time which the inmate has earned for past years and which has been credited to him." *Harrell*, 2020 WL 2815139 at *3.

## IV. RECOMMENDATION

Accordingly, it is respectfully recommended that the Government's motion for summary judgment (D.E. 14) be **GRANTED** and Nunez-Reynoso's petition (D.E. 1) be **DENIED**.

Respectfully submitted on September 29, 2022.

_____
Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).